# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 25, 2012 Session

## STATE OF TENNESSEE v. ALBERT FRANKLIN THOMPKINS

### Appeal from the Criminal Court for Knox County
### No. 88844      Steven W. Sword, Judge

### No. E2011-02170-CCA-R3-CD - Filed September 6, 2012

The Defendant, Albert Franklin Thompkins, appeals as of right from the trial court's revocation of his enhanced probation and reinstatement of his eight-year sentence for rape. The Defendant contends that the trial court abused its discretion in revoking his probation because the State failed to prove that he had violated the terms of his probation in a substantial way in that he had not committed any new crimes nor was there any evidence that he had failed any drug screens. Following our review, we affirm the trial court's revocation of the Defendant's probation and order that the Defendant execute his original sentence in confinement.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Wesley Stone, Knoxville, Tennessee, for the appellant, Albert Franklin Thompkins.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; Randall E. Nichols, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

The Defendant was indicted for aggravated rape, a Class A felony, and aggravated

assault, a Class C felony, on April 1, 2008. Counsel was appointed and a trial date was set.[1] The Defendant pled nolo contendre to the reduced charge of rape, a Class B felony, on February 11, 2009, and was sentenced to eight years in the Department of Correction (DOC), at 100% release eligibility as a violent offender. The aggravated assault charge was dismissed. The Defendant's sentence was suspended, and he was placed on enhanced probation for 6 years and 351 days with pre-trial jail credit from January 28, 2008, to February 11, 2009. Under the terms of the agreement, the Defendant was required to comply with the laws of any city, state, or the United States; pay court costs; have no contact with the victim; register as a sex offender; and follow the rules of probation for sex offenders.

On March 9, 2011, the Defendant's probation officer, Brandy Winston, filed a probation violation affidavit alleging that the Defendant had violated the rules of his probation. In the affidavit, Ms. Winston alleged that the Defendant had (1) "failed to obey the rules of GPS monitoring"; (2) "failed not to use intoxicants of any kind to excess, or use or have in his possession narcotic drugs or marijuana"; and (3) "failed to abide by the Specialized Rules for Probation[,]" specifically the requirement that he "participate in sex offender treatment classes." A violation warrant was issued for the Defendant, and he was taken into custody.

The hearing on the probation violation warrant was held on September 8, 2011.[2] The State presented the Defendant's probation officer, Ms. Winston, as a witness, and the Defendant testified on his own behalf at the revocation hearing. Ms. Winston testified that the Defendant was placed on probation on February 11, 2009, and that she had been supervising the Defendant since January 2011. Ms. Winston explained that since the Defendant commenced probation, he had been placed on GPS monitoring and drug screening. She noted that the Defendant's criminal history involved theft, criminal trespassing, assault, driving on a suspended license, disorderly conduct, and public intoxication. Ms. Winston also testified that the Defendant's probation had been revoked in the past.

Ms. Winston testified that the Defendant committed a number of violations forming the basis for the violation warrant, the first involving his GPS monitoring. She explained that he was placed on GPS in March of 2010 because he received a high score on the Vermont

---

[1] Prior to the disposition of this case, there was a change of counsel and a number of continuances.

[2] Before any evidence was presented, the trial judge informed the Defendant of his prior employment with the District Attorney's office, stated his ability to rule on the Defendant's case impartially, and asked the Defendant if he desired to waive any potential conflicts; the Defendant consented to the trial judge's presiding over the hearing.

Sex Offender Assessment. Ms. Winston testified that on eight different occasions, the Defendant had "cuff leaves, which means he's left his personal tracking device away from his person which distorts the tracking system[.]" Ms. Winston also testified that the only excuse the Defendant ever provided her regarding why he failed to have his GPS monitor on his person was that "he just forgot." Ms. Winston further testified that the Defendant also "had two inclusions on violations, which means he was at a residence where he was not supposed to be." She explained that both violations involved the Defendant's presence at Walter P. Taylor housing projects, on two different occasions, and that he was not supposed to be there because his sex offender restrictions prohibited him from being in that housing project. Ms. Winston further explained that the Defendant had to sign a Tennessee Bureau of Investigation (TBI) form when he was placed on probation that detailed all the places where sex offenders are not allowed to go.

Ms. Winston testified that the Defendant also violated his probation terms when he failed two drug screens, testing positive for marijuana. However, the accompanying lab results of those tests were not admitted into evidence because Ms. Winston was not present when the tests were administered. Nonetheless, Ms. Winston testified that the Defendant admitted to her that he was in close proximity to people who were smoking an illegal substance.

Regarding the final basis alleged in the violation warrant, Ms. Winston testified that the Defendant was required to attend sex offender treatment classes but was "effectively removed from treatment class after they noticed that he had disruptive behavior." Ms. Winston explained that the treatment provider sent her a letter stating that "they had tested him, and he had tested positive for alcohol, and so they asked him to be removed from the class." Ms. Winston testified that she discussed the incident with the Defendant and, while he denied being high or drunk, he neither denied being disruptive nor offered an excuse as to why the treatment provider accused him of being disruptive. Ms. Winston also testified that the Defendant had missed six of those weekly sex offender classes prior to his removal from the program.

Additionally, Ms. Winston noted that the Defendant was not current in his probation related fees: he was $1285 behind on his probation fees and had failed to pay the $50 GPS fee and the $150 sex offender registration fee.

Ms. Winston testified that she was not willing to supervise the Defendant and get him into compliance, nor did she think it was possible. She explained that the Defendant "holds back some things . . . doesn't come out truthfully[,]" and "kind of walks around the situation." However, Ms. Winston testified that the Defendant had never missed an appointment with her.

On cross-examination, Ms. Winston stated that the sex offender treatment provider who removed the Defendant from the program had agreed to allow the Defendant to return to the program. Ms. Winston also stated that, prior to December 7, 2010, the Defendant did not have any problems reporting to his sex offender treatment program.

Regarding the GPS monitoring device, Ms. Winston testified that – despite the Defendant's assertion that his cuff violations were due to an equipment malfunction – if a GPS monitor malfunctioned, the monitoring center would have called her and informed her of such. She also testified that the Defendant's previous probation officer placed him on GPS monitoring and that she presumed the Defendant did not have any cuff violation while being supervised by his previous officer because there were no notations in the Defendant's file to suggest otherwise.

The Defendant testified on his own behalf at the hearing. When asked about his family members, the Defendant explained, "they're mainly out in Walter P. [Taylor housing project]. That's where I mainly get to see some of my grand kids and great grandbaby. Why they tell me I cannot go there, I don't understand that neither." The Defendant testified that he also went to the housing project to talk to the office manager about reinstating his former apartment there and to inquire as to how much his reinstatement would cost. He testified that he was living in the Walter P. Taylor housing project when the underlying offense occurred.

The Defendant explained that he was behind on his court fees because he only had temporary employment when he started probation and that he had only recently started receiving disability income. The Defendant contended that he was "just getting ready to pay up his debt to everyone . . . right before [he] came to jail[.]" Regarding the $150 TBI fee, the Defendant insisted that he had paid the fee. The Defendant also insisted that he was unaware that he was responsible for paying $50 for GPS monitoring. However, the Defendant testified that he could satisfy all of his probation and court-related obligations if the court reinstated his probation. The Defendant explained, "[the r]eason things started going downhill was within 16 days I lost 10 of my best friends." He asked the court to reinstate his probationary status and stated that he "could get all the necessary things done as agreed the first time."

On cross-examination, the Defendant admitted that he had eight cuff violations and that he told Ms. Winston that he had forgotten to wear the GPS monitor a couple of times. He explained, "I would leave it at home, and then when I would get on the bus and realized that I didn't have it because the little ankle bracelet kind of gives a little vibration on my leg." The Defendant admitted that he was "around all the people that was doing the marijuana." The Defendant also admitted that he "hit a joint or two" while on probation but insisted that he did not make a habit of smoking marijuana. The Defendant admitted that he missed

several sex offender treatment classes but stated that he could not remember the exact dates; however, he insisted that he was "probably sick."

On redirect, the Defendant testified that he only missed six out of fifty-two of his weekly sex offender treatment classes. He insisted that he attended all of the meetings unless he was having hip issues or otherwise hurting. The Defendant testified that he did not recall missing any meetings in 2011. The Defendant also explained that he used the marijuana that he testified about on cross-examination "after the funerals and everybody gets together, you know, remembering the old days."

In revoking the Defendant's probation, the trial court found that the Defendant had violated his probation for the following reasons: (1) his failure to attend six sex offender treatment classes; (2) his lack of effort to pay the fees for the treatment classes; (3) his intoxication at a sex offender treatment class; (4) his use of a controlled substance; and (5) his failure to abide by the rules of GPS monitoring. The trial court noted that rape is a serious offense and that getting probation for committing such an act is unusual. The trial court explained,

> [w]hat strikes me the most is that you knew for a fact that you could not go into Walter P. Taylor, not only because, as someone on community supervision for life and this sex offender probation, you're not allowed to go into those types of projects, but that is the very place where the offense occurred, and that is quite disturbing to the Court, and it shows to me that you show an unwillingness to follow the rules of the Court and you'll do what you want to do, whether you're suffering from grief or you just want to see your family, and for anyone--for the public safety interest . . . we have to know where you are at all time. One time would be unacceptable. In your case you violated a GPS 10 times: Eight times for not having the monitor with you, and twice for going where you shouldn't go.
>
> In addition to that, your use of controlled substance is disturbing to the Court. Not only is that a crime, but that affects your ability to think and reason and increases your likelihood of making poor decisions, and you have shown in the past that when you make a poor decision, people get hurt.
>
> And so I find that you're a great risk to the public safety, the way you have conducted yourself on probation. I have no confidence that you can be successful based on that history, and so I will revoke your probation at this time and order that you complete your sentence in the Tennessee Department of Corrections.

The Defendant perfected a timely appeal.

ANALYSIS

The Defendant contends that the State failed to prove that he had violated the terms of his probation in a substantial way and that the trial court abused its discretion in revoking his probation because of "these alleged technical violations." The Defendant also contends that the trial court "had other options at its disposal other than ordering the Defendant's sentence into execution" given that he had not committed any new crimes nor was there any evidence that he had failed any drug screens during the two years he had been released into the community. The State responds that the trial court may, within its discretion, revoke the Defendant's probation for the stated violations and that the preponderance of the evidence supports the trial court's determination.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40–35–311(e). A trial court is not required to find that a violation of probation occurred beyond a reasonable doubt. Stamps v. State, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). "The evidence need only show [that the trial court] has exercised conscientious judgment in making the decision rather than acting arbitrarily." Id. Upon finding by a preponderance of the evidence that a defendant has violated the conditions of his release, the trial court "shall have the right . . . to revoke the probation and suspension of sentence" and either "commence the execution of the judgment as originally entered" or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. § 40–35–311(e).

In a probation revocation hearing, the credibility of the witnesses is determined by the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). On appeal, we will not disturb the trial court's decision to revoke probation absent an abuse of discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001); see also State v. Reams, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). We will grant relief only when "'the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved.'" Shaffer, 45 S.W.3d at 555 (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)). In reviewing the trial court's findings, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious, rather than an arbitrary, judgment. Mitchell, 810 S.W.2d at 735. An arbitrary judgment "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" Shaffer, 45

S.W.3d at 555 (quoting <u>State v. Moore</u>, 6 S.W.3d 235, 242 (Tenn. 1999)).

In the instant case, we conclude that the trial court did not abuse its discretion by finding that the Defendant violated the terms of his probation. The Defendant admitted that he left his GPS monitoring device away from his person on multiple occasions and that, on at least two occasions, he visited the Walter P. Taylor housing projects, premises to which sex offenders are prohibited from going. The Defendant also admitted that he consumed marijuana while on probation. The Defendant acknowledged that he missed six of his required sex offender treatment classes and that he was behind on his fees. Additionally, Ms. Winston's testimony that the Defendant was removed from his sex offender treatment classes for being disruptive and testing positive for alcohol consumption was undisputed. Contrary to the Defendant's assertion that the trial court erred in revoking his probation because his violations were technical in nature, we are aware of no rule that prohibits the trial court from revoking a defendant's probation based on technical violations. Furthermore, by the Defendant's own admission, his violations were not "merely technical" because he admitted to consuming marijuana – which is a crime – and violating the TBI community supervision for life rules prohibiting him from being in the Walter P. Taylor housing projects. These housing projects are also the place were the underlying offense was committed, and the Defendant knowingly violated this restriction at least twice, actions that disturbed the trial court. While the Defendant has not been charged with new criminal offenses, his clear disregard for the rules of probation clearly show, as found by the trial court, that the Defendant is not likely to succeed on probation. Therefore, the trial court was well within its discretion to revoke the Defendant's probation and order his original sentence into execution.

CONCLUSION

Accordingly, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE